Argued 23 June, decided 13 July, 1903.

**COLBATH *v.* HOEFER.**

[73 Pac. 10.]

</div>

GARNISHEE'S CONTRACT TO HOLD GARNISHED PROPERTY.

1. A receipt acknowledging that receiptors, who were garnishees in an action against A, had "received from C, sheriff, all the hops raised by A on our land," is an admission that the sheriff had possession of the hops in his official capacity, and that A owned them.

PLEADING — BREACH OF CONTRACT TO RETURN ATTACHED PROPERTY.

2. Where a receipt given to a sheriff by garnishees acknowledged the receipt of property of the judgment debtor, which receiptors agreed to hold until ordered "to release the same" by the sheriff, an allegation in the complaint in an action by the sheriff for breach of the contract to return the property, that plaintiff had demanded possession of the property, which receiptors refused and still refuse to deliver, was sufficient, after answer, as an allegation of breach of the agreement to return the property.

ESTOPPED BY CONDUCT.

3. Where a receipt given by garnishees acknowledged that receiptors had received certain property of the judgment debtor from the sheriff, which they agreed to hold until released by the sheriff, they were estopped, in an action by the sheriff for breach of the agreement to return the property, from showing that the property had never been in their possession, or that the sheriff had never levied on the property or taken possession thereof.

From Marion: GEORGE H. BURNETT, Judge.

The plaintiff for a cause of action sets up, in substance: That he is now, and has been during the times mentioned herein, the duly elected, qualified, and acting Sheriff of Marion County, Oregon; that defendants, who are copartners, on or about the twenty-fourth day of September, 1902, received from him about one hundred and thirty-six

bales of hops, in Marion County, Oregon, weighing 25,840 pounds, of the reasonable value of $6,460, for which they gave him a receipt in words and figures as follows:

"G. Muecke,
     *v.*
Ah Lee.

Champoeg, Sept. 24, 1902.

Received of B. B. Colbath, Sheriff of Marion County, all the hops raised by Ah Lee on our land near Champoeg, in Marion Co., Or., and agree to hold the same for the said sheriff until ordered to release the same by said sheriff. Damages by the elements excepted.

HOEFER & ZORN."

It is further alleged that at said time the plaintiff was acting in his official capacity as sheriff; that the receipt includes all the hops raised by Ah Lee on defendants' land; that on or about November 22, 1902, he demanded possession of said hops from defendants, which they refused, and still neglect and refuse to deliver the same to plaintiff, to his damage in the sum of $6,460. The prayer is for the sum named, with costs and disbursements.

Defendants answered, denying all the material allegations of the complaint, except that plaintiff was and is the sheriff of Marion County and the giving of the receipt, and for a further defense alleging, in substance: (1) That on said twenty-fourth day of September, 1902, the plaintiff as such sheriff served a notice of garnishment upon them on an execution issued out of the circuit court of Marion County, in the case of *G. Muecke* v. *Ah Lee and Dan Mc-Cann*, upon a judgment therein in favor of Muecke and against Ah Lee, for the sum of $441.16, with accrued interest, and the further sum of $14 costs, whereby the sheriff attempted to garnishee certain hops claimed by Muecke to belong to Ah Lee, but which were not then and never had been in the possession of said defendants, or either of them; (2) That plaintiff, as sheriff, then represented to

Hoefer, one of the defendants, that if he would sign the receipt it would be a sufficient return to the garnishment, and would save plaintiff the trouble and expense of taking said hops into his possession ; and said defendant, not being advised as to the correct and proper manner of making return upon said garnishment, and relying upon said statement of plaintiff, signed the receipt, but that plaintiff in fact never levied upon said hops at the time in the possession or under the control of either of said defendants.

The plaintiff moved to strike out each of these two paragraphs, and others of the separate defense, but was unsuccessful as to these. The reply as to the first paragraph denies the allegation that said hops were not in the possession of the defendants, or either of them, on the said twenty-fourth day of September, 1902, and, as to the second, specifically each and every allegation thereof.

Upon this state of the pleadings the defendants moved for judgment thereon, and prevailed ; and, judgment having been entered dismissing the action, the plaintiff appeals.                                        REVERSED.

For appellant there was a brief and an oral argument by *Mr. William H. Holmes* and *Mr. Webster Holmes.*

For respondents there was a brief over the names of *William M. Kaiser* and *Woodson T. Slater*, with an oral argument by *Mr. Slater.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion.

The questions presented by this record are novel and of first impression in this court. The action is in the nature of assumpsit, to recover damages for a breach of contract, and the primary question presented is whether the complaint states facts sufficient to constitute a cause of action. The objection coming, as it does, after answer, the test will be, as frequently announced by this court, whether

the complaint will support a verdict. The specific objections made to it are (1) that it does not state who was the owner of the hops at the time, or what right or interest, if any, the plaintiff had therein; and (2) that the allegation that plaintiff demanded of defendants a surrender of the possession of the hops, and that defendants refused to deliver the same to him, is not a sufficient assignment of a breach of the terms of defendants' agreement "to hold the same for the sheriff until ordered to release the same by said sheriff."

Some general observations relative to the nature of such contracts and the principles upon which their validity is based and sustained are necessary to a full understanding of the conclusions at which we have arrived. They seem to have been in general use in the New England states and a few others, but are not without precedent elsewhere. It is said that they are "usually absolute and unconditional in their terms, and conclusive in respect of their recitals and admissions, but are nevertheless, by operation of law, contingent": Murfree, Sheriffs, § 660. They frequently run in the alternative — to return the property upon demand, or pay the value thereof, or pay the amount of such judgment as may be recovered in the action — but may be drawn for a return only. The officer has no personal interest in the property or in its possession. He holds it as an officer of the law and for the purposes of the law. His right to enforce the promises of the receiptor rests in his liability to the creditor during the existence of the lien, and to the debtor when that lien is discharged : *Bangs* v. *Beacham,* 68 Me. 425. The consideration going to the support of such an agreement is the release of the property for the time being for the use and benefit of the judgment debtor, or its delivery to the bailee upon the faith of his promise to return it when it is desired to subject

*43 Or.—24*

the same to process in the action: *Clark* v. *Gaylord*, 24 Conn. 484.

The receiptor's liability is to be determined by the terms of the contract, and whether he is estopped to show that the property belonged, not to the debtor, but to some third party, depends upon whether it is a contract of indemnity, or an express assurance for a certain amount or value, whereby he assumes an absolute liability, or a mere contract of bailment for the safe keeping and return of the specific chattels. If the former, he could not be allowed to prove title in a third person; but if, on the other hand, the contract be one of bailment only, then he may always excuse himself for nondelivery by showing that the property was that of a third person, and not of the debtor. But he must further show that it has been delivered to the true owner in obedience to the paramount title: *Mason* v. *Aldrich*, 36 Minn. 283 (30 N. W. 884); *Lathrop* v. *Cook*, 14 Me. 414 (31 Am. Dec. 62); *Penobscot Boom Corp.* v. *Wilkins*, 27 Me. 345; *Clark* v. *Gaylord*, 24 Conn. 484. The reason for the rule is that the sheriff could not be made liable in an action by the plaintiff in the writ for not levying upon property not that of the judgment debtor, and the person having the paramount title may take it from him as well as from the receiptor, which would be the end of the controversy so far as the property is concerned: *Learned* v. *Bryant*, 13 Mass. 224; *Fisher* v. *Bartlett*, 8 Me. 122. Nor will he be permitted to show that the property was not at the time of the attempted levy and delivery of the receipt, or never had been, in the possession of the defendants in the writ; and upon the same principle he will not be permitted to show that the property was not in his possession, or that no sufficient levy of the writ had been made by the officer having it in charge for execution: *Bangs* v. *Beacham*, 68 Me. 425; *Spencer* v. *Williams*, 2 Vt. 209 (19 Am. Dec. 711); *West* v. *Thompson*, 27 Vt. 613; *Jewett* v.

*Torrey*, 11 Mass. 219; *Lyman* v. *Lyman*, 11 Mass. 317; *Hunter* v. *Peaks*, 74 Me. 363. With these observations, we will recur to the questions presented.

1. The contract in controversy is one of simple bailment. It runs: "Received of B. B. Colbath, Sheriff of Marion County, all the hops raised by Ah Lee on our land." This is an acknowledgement of plaintiff's possession of the hops as sheriff, and, having been raised by Ah Lee upon the land of defendants, one would naturally suppose or infer that Ah Lee was the owner, and such is the reasonable interpretation of the contract.

2. The contract, it must be admitted, is inartistically drawn as it respects defendants' agreement touching a relinquishment of the property. They were to hold it until ordered to release the same by the sheriff. The sheriff had, as we have seen, delivered it to the defendants. The receipt or contract is an acknowledgment of this, and when the parties used the term "release" it must have been in the sense of a return or redelivery to the sheriff. He would be entitled to it, either to satisfy his writ or to return it to the defendants. So we are constrained to hold that the complaint contains a sufficient assignment of a breach of defendants' undertaking. This disposes of the contention of the respondents respecting the motion for judgment on the pleadings, and, being untenable, the motion should have been overruled.

3. There is another assignment of error important to be considered in deciding the controversy, which is with reference to the overruling of plaintiff's motion to strike out the first and second paragraphs of defendants' first separate defense. The purpose of these paragraphs, as we construe them, was to show (1) that the hops were not at the time of the execution of the receipt, or at any time previous thereto, in the possession of the defendants in this action; and (2) that plaintiff had never in fact levied

upon any of said hops, or taken them into his possession. Within the principles hereinbefore announced, by acknowledging receipt of the property from the sheriff the defendants have estopped themselves to aver that it was not in their possession at the time, or that the sheriff had not made the proper levy or service of garnishment. If the hops were not in their possession at the time, they should have made their answer accordingly, and thus relieved themselves entirely of responsibility, or, if there had been no garnishment, they were not obliged to make any answer. But by entering into the contract of bailment, in the absence of fraud or misrepresentation on the part of plaintiff (the answer disclosing naught to the contrary), they are precluded from showing these things, because there was an express admission the other way, upon which the sheriff relied, and was thereby induced to change his position, and refrain from further levy of the writ and the exercise of further diligence in quest of property to satisfy the execution. See, also, *Cornell* v. *Dakin,* 38 N. Y. 253; *Burk* v. *Webb,* 32 Mich. 173. We hold, therefore, that there was error in not sustaining the motion to strike out these two paragraphs of the answer also. In accordance with these considerations, the judgment will be reversed, and the cause remanded, with directions to sustain the motion to strike out the two paragraphs of the separate defense alluded to, and for such further proceedings as may seem proper.                                    REVERSED.